## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

SPORTS MANAGEMENT
NETWORK, INC.,

      Plaintiff,

                                    Case No.

v.

                                    Hon.

KURT BUSCH, INC. and
KURT BUSCH,
jointly and severally,

      Defendants.
_____/

Eric Scheible (P54174)
J. Christian Hauser (P57990)
FRASCO CAPONIGRO
WINEMAN & SCHEIBLE, PLLC
Attorneys for Plaintiff
1301 W. Long Lake Road, Suite 250
Troy, MI 48098
(248) 334-6767 / (248) 334-0999 fax
es@frascap.com
ch@frascap.com
_____/

## **COMPLAINT**

Sports Management Network, Inc. ("SMN"), through its attorneys, for its Complaint against Kurt Busch, Inc. ("KBI") and Kurt Busch ("KB"), jointly and severally (collectively, "Defendants"), states as follows:

## PARTIES AND JURISDICTION

1.  SMN is a Michigan corporation with its principal place of business in Troy, Michigan.

2.  KBI is a North Carolina corporation, with its principal place of business in Mooresville, North Carolina, which conducts business in Oakland County, Michigan.

3.  KB is a resident of Mooresville, North Carolina, who conducts business in Oakland County, Michigan.

4.  Jurisdiction is proper pursuant to 28 USC §1332 because Plaintiff is diverse from both Defendants for purposes of citizenship and the amount in controversy exceeds Seventy-Five Thousand ($75,000) Dollars.

5.  Venue is proper pursuant to 28 USC §1391(b)(2) because the underlying dispute surrounds business that was conducted in Oakland County, Michigan.

## GENERAL ALLEGATIONS

6.  SMN, formed in 1989, is an organization that possesses specialized knowledge, experience, and contacts within the area of sports, media, and entertainment, with a concentration on professional motorsports, and in the representation of drivers and race teams, as well as in the solicitation, development, and creation of motorsports partnerships and sponsorships.

7. KB is American professional stock car racing driver who currently drives the No. 41 Ford Fusion for Stewart-Haas Racing in the Monster Energy NASCAR Cup Series. KB is the sole shareholder of KBI, which is an entity he formed to manage his professional driving career and related sponsor and personal services obligations.

8. In 2005, SMN and Defendants agreed for SMN to undertake representation of the Defendants. To that end, the parties executed a Representation Agreement ("RA") on November 16, 2005. The parties extended the RA on August 11, 2010. Defendants are in possession of the RA and, therefore, it is not attached.

9. By the spring of 2012, because of various circumstances in Defendants' career, it became apparent that the money that Defendants would receive in 2012 from KB's professional driving activities would be a fraction of what they previously received. In light of this, and without being asked to do so, in or about May, 2012, SMN offered to modify only Defendants' 2012 payment obligations to SMN under the RA such that SMN's compensation for 2012 only would be reduced from $250,000 to $125,000. Defendants accepted this offer and were appreciative of this gesture and so stated on multiple occasions.

10. Shortly thereafter, in or about July, 2012, Defendants offered, and SMN accepted, to compensate SMN under the RA commencing in January, 2013

and continuing thereafter at a rate of 10% of Defendants' driver retainer negotiated and specified in Defendants' future driver agreements amount plus 10% of all revenue paid to Defendants from personal services agreements.

11. Subsequently, SMN negotiated and finalized multiple agreements for Defendants including, but not limited to, driver agreements, sponsor agreements, and personal services agreements, pursuant to the terms of which Defendants will be paid compensation through 2018, amounts on which Defendants are obligated to pay SMN under the RA.

12. Based on the parties' agreement, as modified, SMN invoiced Defendants beginning in January, 2013 and Defendants paid SMN consistent with the above – through all of 2013, through all of 2014, through all of 2015, and for the first quarter of 2016 – all without dispute.

13. In or about March, 2016, Defendants terminated their relationship with SMN effective immediately and, despite its obligation to continue paying SMN pursuant to the RA, ceased paying SMN altogether from that point forward.

14. Pursuant to paragraph 3.G. of the RA, which survives termination of the parties' relationship, Defendants remain obligated to SMN for services rendered and SMN continued to invoice Defendants accordingly.

15. SMN sent quarterly invoices to Defendants as had been the parties' practice for more than a decade, because SMN is entitled to compensation earned

in conjunction with Defendants' various contracts at the time that Defendants receive payment thereunder.  SMN is entitled to payment under Defendants' various agreements including those under which Defendants have yet to be paid.

16. The total amount due and owing by Defendants, jointly and severally, to SMN, as of the date of this Complaint, is $930,450 ("Outstanding Amount").

17. In addition and because, upon information and belief, the various options for the 2018 race season either have, or will be, exercised by the parties to those agreements with Defendants, SMN is entitled to an additional $540,000 that has yet to be invoiced but is due and owing SMN by Defendants.

18. Despite Defendants' regular payments up to and including first quarter of 2016, Defendants now have failed and refused, without legal justification, to pay the Outstanding Amount.

## COUNT I
## BREACH OF CONTRACT

19. SMN reiterates and incorporates all prior allegations as if fully set forth herein.

20. The RA is a valid and binding contract.

21. SMN has complied with all the terms of the RA.

22. Defendants have failed and refused to pay the Outstanding Amount to SMN, which is a material breach of the RA.

23. SMN has been damaged in an amount not less than $1,470,450 as a result of Defendants' breach of the RA.

WHEREFORE, Sports Management Network, Inc. requests that this Court enter a judgment in its favor and against Defendants Kurt Busch, Inc. and Kurt Busch, jointly and severally, in the amount of $1,470,450, plus interest, costs, and attorneys' fees, and grant it all other relief this Court deems equitable and just.

## COUNT II
## STATUTORY CONVERSION

24. SMN reiterates and incorporates all prior allegations as if fully set forth herein.

25. Defendants have unlawfully retained and are exercising wrongful dominion and control over the Outstanding Amount.

26. SMN, both orally and in writing, have repeatedly demanded return of the funds that Defendants unlawfully retained.

27. Defendants have refused to comply with those multiple, repeated requests.

28. Defendants have attempted to conceal the conversion and intentionally misrepresented facts to conceal the conversion.

29. The acts described above constitute an unlawful conversion of the Outstanding Amount.

30. Pursuant to MCL 600.2919a, Defendants are liable to SMN for treble damages, costs, and attorneys' fees.

WHEREFORE, Sports Management Network, Inc. requests that this Court enter a judgment in its favor and against Defendants Kurt Busch, Inc. and Kurt Busch, jointly and severally, in the amount of $2,791,350 ($930,450 trebled pursuant to MCL 600.2919a), plus interest, costs, and attorneys' fees, and grant it all other relief this Court deems equitable and just.

## COUNT III
## FRAUDULENT MISREPRESENTATION/
## FRAUDULENT INDUCEMENT

31. SMN reiterates and incorporates all prior allegations as if fully set forth herein.

32. Defendants' representations to SMN that they would pay the Outstanding Amount when due was material to SMN's decision to do business with Defendants.

33. Defendants' representations were false.

34. Defendants knew their representations were false when they were made, or made them recklessly, without knowledge of their truth and as positive assertions.

35. Defendants' representations were made with the intention to induce reliance by SMN so that SMN would do business with Defendants.

7

36. SMN relied upon Defendants' representations to its detriment.

37. As a direct and proximate result of Defendants' representations, SMN has been damaged.

WHEREFORE, Sports Management Network, Inc. requests that this Court enter a judgment in its favor and against Defendants Kurt Busch, Inc. and Kurt Busch, jointly and severally, in the amount of $1,470,450, plus interest, costs, and attorneys' fees, and grant it all other relief this Court deems equitable and just.

## COUNT IV
## UNJUST ENRICHMENT

38. SMN reiterates and incorporates all prior allegations as if fully set forth herein.

39. Defendants continue to withhold the Outstanding Amount.

40. Despite numerous requests, Defendants have failed to timely remit the Outstanding Amount.

41. Allowing Defendants to retain the Outstanding Amount will result in unjust enrichment at SMN's expense.

WHEREFORE, Sports Management Network, Inc. requests that this Court enter a judgment in its favor and against Defendants Kurt Busch, Inc. and Kurt Busch, jointly and severally, in the amount of $1,470,450, plus interest, costs, and attorneys' fees, and grant it all other relief this Court deems equitable and just.

## COUNT V
## BREACH OF FIDUCIARY DUTY

42. SMN reiterates and incorporates all prior allegations as if fully set forth herein.

43. Defendants have a fiduciary relationship of good faith, fair dealing, and loyalty to SMN.

44. As fiduciaries, Defendants have an obligation not to misappropriate, convert, or unlawfully retain the Outstanding Amount.

45. Defendants breached their fiduciary duties to SMN by, among other ways, converting funds, failing to honor their multiple promises, and by otherwise breaching their duties and obligations with respect to the Outstanding Amount.

46. As fiduciaries, Defendants owed a duty of good faith, fair dealing, and loyalty to SMN, which duties were breached.

47. These multiple breaches have damaged SMN.

WHEREFORE, Sports Management Network, Inc. requests that this Court enter a judgment in its favor and against Defendants Kurt Busch, Inc. and Kurt Busch, jointly and severally, in the amount of $1,470,450, plus interest, costs, and attorneys' fees, and grant it all other relief this Court deems equitable and just.

## COUNT VI
## PROMISSORY ESTOPPEL

48.     SMN reiterates and incorporates all prior allegations as if fully set forth herein.

49.     Defendants should reasonably have expected their promises to SMN that SMN would receive the Outstanding Amount when due to induce a definite and substantial act of forbearance or reliance as a result of their promises.

50.     SMN, to its detriment, did rely on Defendants' promises.

51.     Under these circumstances, justice requires that Defendants' promises be enforced.

WHEREFORE, Sports Management Network, Inc. requests that this Court enter a judgment in its favor and against Defendants Kurt Busch, Inc. and Kurt Busch, jointly and severally, in the amount of $1,470,450, plus interest, costs, and attorneys' fees, and grant it all other relief this Court deems equitable and just.

## COUNT VII
## QUANTUM MERUIT / CONSTRUCTIVE TRUST

52.     SMN reiterates and incorporates all prior allegations as if fully set forth herein.

53.     Defendants promised to SMN that they would remit the Outstanding Amount in a timely manner.

54. Defendants obtained substantial benefits from the use of the Outstanding Amount taken and unlawfully withheld contrary to their promises to SMN.

55. Defendants have not remitted the Outstanding Amount to SMN as promised.

56. Allowing Defendants to retain the Outstanding Amount without remitting it in full would be inequitable.

57. Allowing Defendants to retain the benefits of the Outstanding Amount without full compensation to SMN would result in Defendants' unjust enrichment at SMN's expense.

58. A constructive trust must be established as a matter of law, for SMN's benefit, that covers the Outstanding Amount that is owed to SMN and that has not been paid solely due to the Defendants' actions and / or inaction.

WHEREFORE, Sports Management Network, Inc. requests that this Court enter a judgment in its favor and against Defendants Kurt Busch, Inc. and Kurt Busch, jointly and severally, in the amount of $1,470,450, plus interest, costs, and attorneys' fees, and grant it all other relief this Court deems equitable and just.

## COUNT VIII
## DECLARATORY JUDGMENT

59. SMN reiterates and incorporates all prior allegations as if fully set forth herein.

60. The Declaratory Judgment Act permits this Court, in a case of actual controversy within its jurisdiction, to declare the rights of any interested party seeking such declaration. 28 USC §2201; Fed.R.Civ.P. 57

61. There is no dispute that SMN is owed the Outstanding Amount that is being improperly and unlawfully withheld by Defendants.

62. SMN has suffered a loss as a result of Defendants' failure to timely remit the Outstanding Amount, which SMN is rightfully owed.

63. Despite its multiple, repeated requests, Defendants have failed and refused to comply with SMN's demands to timely remit the Outstanding Amount.

64. SMN is entitled to a declaratory judgment ruling that Defendants must remit the Outstanding Amount, without set-off, credit, fees, returns, chargebacks, holdback, or any other reduction.

WHEREFORE, Sports Management Network, Inc. requests that this Court enter a judgment in its favor and against Defendants Kurt Busch, Inc. and Kurt Busch, jointly and severally, in the amount of $1,470,450, plus interest, costs, and attorneys' fees, and grant it all other relief this Court deems equitable and just.

## COUNT IX
## ACCOUNT STATED / OPEN ACCOUNT

65. SMN reiterates and incorporates all prior allegations as if fully set forth herein.

66. SMN provided services to Defendants on an open account upon the promises of Defendants to pay for the same.

67. There is now $930,450 unpaid on the account.

68. The account has become stated between the parties because SMN routinely has sent statements on the account to Defendants, who received and retained them without objection within a reasonable time.

69. Despite SMN's repeated demands for payment, Defendants have not paid the Outstanding Amount.

70. As a result, Defendants are justly indebted to SMN in the amount of $930,450, plus interest, costs, and attorneys' fees (**Exhibit 1**).

WHEREFORE, Sports Management Network, Inc. requests that this Court enter a judgment in its favor and against Defendants Kurt Busch, Inc. and Kurt Busch, jointly and severally, in the amount of $930,450, plus interest, costs, and attorneys' fees, and grant it all other relief this Court deems equitable and just.

        FRASCO CAPONIGRO
        WINEMAN & SCHEIBLE, PLLC

        /s/ Eric Scheible
        Eric D. Scheible (P54174)
        J. Christian Hauser (P57990)
        Attorneys for Plaintiff
        1301 West Long Lake Road, Suite 250
        Troy, Michigan 48098
        (248) 334-6767 / (248) 334-0999 fax
        es@frascap.com

Dated: February 8, 2017        ch@frascap.com